UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCT OF WISCONSIN
GREEN BAY DIVISION

|  |  |  |
|---|---|---|
| EDWARD C. HUGLER, Acting Secretary of Labor, United States Department of Labor, | : : : : : | |
| Plaintiff, | : : | Civil Action No.: 1:17-cv-00589 |
| v. | : : : | |
| DURA-FIBRE, LLC | : : : | |
| Defendant. | : : | |

## COMPLAINT

Edward C. Hugler, United States Acting Secretary of Labor ("the Secretary"), brings this action to enjoin Defendant, Dura-Fibre, LLC ("Dura-Fibre"), from violating Section 11(c) of the Occupational Safety and Health Act of 1970, as amended ("the Act"), 29 U.S.C. § 660(c), and for an order directing Defendant (1) to pay back wage compensation, (2) to reinstate the discharged employee, (3) to rescind and nullify the discipline of its employees based on their exercising rights under the Act and the implementing regulations, (4) to revise its injury reporting and disciplinary policies to comply with the Act, and (5) granting any other appropriate relief that the Court deems proper to afford relief to the discharged employee and any other of Defendant's employees who were or are adversely affected by Dura-Fibre's injury reporting and disciplinary policies.

**I.**

(a)  Jurisdiction of this action is conferred upon the Court by Section 11(c)(2) of the Act, 29 U.S.C. § 600(c)(2), and by 28 U.S.C. §§ 1331 and 1345.

(b) Venue lies in the Eastern District of Wisconsin under Section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), and under 28 U.S.C. § 1391(b) because Defendant is organized and incorporated under Wisconsin law and resides in this district.

## II.

(a) Defendant, Dura-Fibre, LLC, is a limited liability company, organized under the laws of the State of Wisconsin, and at all relevant times, maintained a place of business at 352 6th Street, Menasha, WI 54952, and is engaged in the business of the manufacture and sale of laminated paperboard products and solutions within the jurisdiction of this Court.

(b) Defendant was, at all relevant times herein, a "person," as defined by section 3(4) of the Act, 29 U.S.C. § 652(4), and an "employer," as defined by section 3(5) of the Act, 29 U.S.C. § 652(5).

## III.

(a) At all times relevant to the allegations in this complaint, Dura-Fibre published and enforced, and continues to publish and enforce, an "Accident Reporting/Investigation Plan" ("the reporting plan") requiring, among other things, that employees must "immediately" notify their immediate supervisor, a "Lead Operator," of an injury, an "accident" or a "near miss" in which they were involved.

(b) Dura-Fibre's reporting plan provides that the Lead Operator must then notify their Supervisor "as soon as possible after an accident or near miss occurs."

(c) The reporting plan further provides that the Supervisor determines whether the safety occurrence was an "accident" or a "near miss."

(d) The reporting plan defines an "accident" as "any occurrence that led to physical harm or injury to an employee and/or led to damage of company property." It defines a "near miss" as "any occurrence that did not result in an accident but could have."

(e) The reporting plan also provides that any employee who does not report an accident or a near miss "in a timely fashion" is subject to disciplinary measures up to and including termination.

(f) The reporting plan further provides that an employee who reports a near miss prior to the end of their shift will not receive disciplinary action. There is no similar provision for the reporting of an accident prior to the end of a shift.

(g) Exhibit B to the contract between Dura-Fibre and its union ("the union contract"), United Steel Workers Local 2-432, sets forth a points-based disciplinary system wherein any employee who accumulates twenty-four points for a range of infractions is subject to discharge from Dura-Fibre.

(h) The union contract provides that Dura-Fibre may assess eight disciplinary points to an employee who does not report an accident or injury to a supervisor on the date of the injury before leaving Dura-Fibre's premises.

(i) The union contract further provides that the Dura-Fibre may assess four to eight disciplinary points to an employee for "committing an unsafe act."

(j) Neither the reporting plan nor the union contract defines the term "unsafe act."

(k) Neither the reporting plan nor the union contract defines the term "injury."

(l) On or about February 25, 2008, Dura-Fibre hired Complainant Timothy Jacobs as an employee of the company. At all times relevant to the allegation in this Complaint,

3

Complainant was employed by Dura-Fibre as a Laminator Lead Operator at Dura-Fibre's Menasha, Wisconsin facility.

(m) Complainant was, at all times material herein, an employee who was employed by an employer as defined by Sections 3(5) and 3(6) of the Act, 29 U.S.C. § 652(5), (6).

(n) On or about May 20, 2013, Dura-Fibre employee Steven Wilz reported to Complainant that he had "tweaked" his shoulder, though he indicated that he was "okay" upon questioning from Complainant.

(o) Given Mr. Wilz's assessment that he was "okay," neither Mr. Wilz nor Complainant reported the tweaked shoulder to a supervisor prior to the end of the shift or to going home on the day that Mr. Wilz tweaked his shoulder.

(p) On or about May 21, 2013, Mr. Wilz reported to Complainant that his shoulder was sore. On that same day, Complainant reported the injury to Jamie Gonnering, Dura-Fibre's Safety Coordinator and Human Resources Manager. Complainant reported the injury to Ms. Gonnering because his immediate supervisor, Scott Blair, was not at the facility that day.

(q) On or about May 22, 2013, Mr. Blair informed Complainant that Dura-Fibre had assessed him eight disciplinary points for failing to report Mr. Wilz's shoulder tweak in a "timely manner."

(r) Later on or about May 22, 2013, after the meeting with Mr. Blair, Complainant informed Mr. Blair that he had twisted his ankle earlier in the day at the bottom of a short staircase by some industrial machinery.

(s) On or about May 23, 2013, Dura-Fibre assessed Complainant an additional four disciplinary points for committing an "unsafe act" when he twisted his ankle the day before.

4

(t)     The twelve disciplinary points assessed to Complainant on or about May 22-23, 2013 resulted in a total of twenty-four disciplinary points given that Complainant already had twelve disciplinary points on his record prior to May 22, 2013.

(u)     Dura-Fibre terminated Complainant's employment on May 23, 2013, because he accumulated twenty-four disciplinary points.

## IV.

(a)     On or about June 4, 2013, Complainant filed a complaint with the Occupational Safety and Health Administration ("OSHA") under Section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), alleging that Dura-Fibre terminated him for reporting workplace injuries.

(b)     OSHA investigated Complainant's complaint and determined that Dura-Fibre violated Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1) when it assessed Complainant disciplinary points and terminated him because he engaged in the protected activity of reporting workplace injuries.

(c)     To date, Dura-Fibre has refused to reinstate Complainant and to compensate him for lost wages and other damages suffered as a result of the company's improper discipline, in continued violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

(d)     Upon information and belief, Dura-Fibre has disciplined and continues to discipline employees in addition to Complainant for reporting injuries, accidents, near misses, and allegations of "unsafe acts" that stem from investigations of such injuries, accidences, and near misses, even in cases where they become aware of injuries only after the incident that lead to the injuries have occurred.

(e)     Dura-Fibre's reporting plan and disciplinary policy make it impossible in many instances for employees to comply with the policy because there are necessarily many situations

5

where an employee will be unaware at the time of an incident that he or another employee sustained a work-related injury.

(f) Dura-Fibre's reporting plan and disciplinary policy discourages employees from reporting work-related injuries in the first instance because they may be assessed disciplinary points for a timely reported injury as an "unsafe act" or alternately may be assessed disciplinary points if they recognize a work-related injury has occurred only after the allotted timeframe to report has passed.

(g) Dura-Fibre's reporting plan and disciplinary policy provides Dura-Fibre and individual managers too much discretion to determine what constitutes an "unsafe act" and an "injury" and whether an occurrence is an "accident" or a "near miss," thus removing any predictability of appropriate disciplinary action and further discouraging employees from reporting work-related injuries, accidents, or near misses.

## V.

Because Complainant reported his ankle twisting and Mr. Wilz's shoulder "tweak", Dura-Fibre assessed Complainant disciplinary points and terminated him in violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

## VI.

By the acts described in Paragraphs III through V above, Defendant did knowingly or maliciously discharge or discriminate against Complainant, because of his exercise of rights under, or related to, the Act. Defendant thereby did engage in, and is engaging in, conduct in violation of Section 11(c) of the Act, 29 U.S.C. § 660(c).

**WHEREFORE**, cause having been shown, Plaintiff prays for judgment:

(a) Permanently enjoining and restraining Defendant, its officers, agents, servants, employees and those persons in active concert or participation with it, from violating the provisions of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c), including a revision of the disciplinary point system as it relates to the reporting of injuries;

(b) Ordering Defendant to make Complainant whole by (1) offering reinstatement to Complainant to his former position; (2) reimbursing Complainant for lost wages and benefits that resulted from his termination, with interest thereon from the date due until paid; and (3) expunging from all personnel and company records references to the circumstances giving rise to Complainant's unlawful termination;

(c) Ordering Defendant to make Complainant whole by providing compensation to reimburse for any costs, expenses, and/or other pecuniary losses he incurred as a result of Defendant's discriminatory actions;

(d) Ordering Defendant to make Complainant whole by providing compensation for non-pecuniary losses, including emotional pain and suffering;

(e) Ordering Defendant to pay additional compensation to Complainant as exemplary or punitive damages in an amount to be determined at trial;

(f) Ordering the posting of notice for employees stating that Defendant will not in any manner discriminate against any employee for engaging in activities protected by Section 11(c) of the Act, 29 U.S.C. § 660(c);

(g) Awarding Plaintiff the costs of this action; and

(h) Ordering such other and further relief as may be necessary and appropriate.

Date: April 25, 2017                    Respectfully submitted,

**NICHOLAS C. GEALE**
Acting Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor


s/ David J. Rutenberg
**DAVID J. RUTENBERG**
Bar No.: NY 5095708
230 S. Dearborn Street, Room 844
Chicago, IL 60604
T: 312-353-6990
F: 312-353-5698
rutenberg.david.j@dol.gov

Attorneys for Plaintiff,
**EDWARD C. HUGLER,**
Acting Secretary of Labor,
United States Department of Labor

## Certificate of Service

I certify that the foregoing Complaint was sent via First Class Mail and email on April 25, 2017 to the following:

> John W. Zawadsky
> Attorney for Defendant
> Reinhart, Boerner, Van Duren S.C.
> 22 East Mifflin Street, Suite 600
> Madison, WI 53703
> jzawadsky@reinhartlaw.com