UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

R. ALEXANDER ACOSTA, Secretary of Labor,
United States Department of Labor,

Plaintiff,

vs.                                    Case No. 1:17-cv-00589

DURA-FIBRE LLC,

Defendant.

## DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSIONS AND REQUESTS FOR DOCUMENTS

Defendant Dura-Fibre LLC ("Dura-Fibre"), by its attorneys, Reinhart Boerner Van Deuren s.c., responds to Plaintiffs' First Set of Interrogatories, Requests for Admission and Requests for Documents (the "Requests") as follows:

### GENERAL OBJECTIONS

1.      Dura-Fibre objects to the Requests to the extent they seek to impose obligations greater than or inconsistent with those imposed by the Federal Rules of Civil Procedure.

2.      Dura-Fibre objects to the Requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege.

3.      Dura-Fibre objects to the Requests to the extent any seek the disclosure of information that is not related in time or proximity to this dispute, are vague, ambiguous, overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

**Ex. 14**

4.   Dura-Fibre objects to the Requests to the extent the documents requested are not in its possession, custody, or control.

5.   Dura-Fibre's responses have been prepared after reasonable investigation and are based upon the best information available to it at this time. Dura-Fibre reserves the right to alter, modify, amend, and/or supplement its objections and responses to the Requests if further information becomes available or additional responsive documents are obtained.

6.   Dura-Fibre reserves the right to supplement these General Objections.

7.   Dura-Fibre incorporates these General Objections into each of the responses set forth below as though fully incorporated therein.

## INTERROGATORIES

1.   Identify all persons whom you believe have knowledge relating to the various subject matters, averments, claims or defenses of this lawsuit, describing generally the knowledge possessed or claimed to be possessed by each such individual.

RESPONSE: Dura-Fibre objects to the extent that "various subject matters" and "averments" is vague and ambiguous. Dura-Fibre further objects to this Request to the extent discovery is still on-going. Subject to these specific objections and the General Objections:

- **Timothy Jacobs**—former Lead Operator at Dura-Fibre, W3052 Dundas Road, Brillion, WI 54110. Mr. Jacobs has knowledge of his employment at Dura-Fibre, including his disciplinary history and termination, Mr. Wilz's shoulder injury, Mr. Jacobs' and Mr. Wilz's failure to report Mr. Wilz's injury prior to the end of their shift and discipline assessed as a result of the failure to timely report the injury, Mr. Jacobs' ankle injury on May 22, 2013, discipline assessed for committing an unsafe act, Mr. Jacobs' NLRB complaint relating to his termination, Dura Fibre's negotiations with United Steel Workers Local 2-432 over collective bargaining agreements and the formation and operation of the Safety Committee.

- **Steven Wilz**—Dura-Fibre employee, N2257 Bean City Rd, New London, WI 54961. Wilz has knowledge of his shoulder injury sustained on or about May 20, 2013, his failure to report the injury by the end of his shift, and discipline assessed as a result of the failure to timely report the injury. Dura-Fibre requests that Plaintiff contact Mr. Wilz through Dura Fibre's counsel.

- **Scott Blair**—Production Supervisor at Dura-Fibre, 73 Oakwood Road, Oshkosh, WI 54904. Mr. Blair has knowledge of Dura-Fibre's Accident Reporting and Investigation Plan, Dura-Fibre's contracts with United Steel Workers Local 2-432, Mr. Jacobs' employment at Dura-Fibre, including his disciplinary history and termination, Mr. Wilz' and Mr. Jacobs' failure to report Mr. Wilz's injury prior to the end of their shift, Mr. Jacobs' reporting of his ankle injury on or about May 22, 2013, the Safety Meeting, at which Mr. Jacobs was assessed a four point infraction for committing an unsafe act, and discipline assessed against other Dura-Fibre employees for violations of the Accident Reporting and Investigation. Dura-Fibre requests that Plaintiff contact Mr. Blair through Dura Fibre's counsel.

- **Jamie Gonnering**—former Human Resources Manager at Dura-Fibre, 5517 County Rd S, Oshkosh, WI 54904. Ms. Gonnering has knowledge of the untimely reporting of Mr. Wilz's injury and discipline assessed against Mr. Wilz and Mr. Jacobs as a result of their failure to comply with the Accident Reporting and Investigation Plan. Ms. Gonnering also has knowledge of Dura-Fibre's Accident Reporting and Investigation Plan, Dura-Fibre's contracts with United Steel Workers Local 2-432, Mr. Jacobs' employment at Dura-Fibre, including his disciplinary history and termination, Mr. Jacobs' reporting of his ankle injury to Scott Blair, the Safety Meeting, at which Mr. Jacobs was assessed a four point infraction for committing an unsafe act, his NLRB complaint related to his termination, and discipline assessed against other Dura-Fibre employees for violations of the Accident Reporting and Investigation.

- **Luke Benrud**–President of Dura-Fibre, 352 Sixth Street, Menasha WI 54952. Mr. Benrud has knowledge of Mr. Jacobs' employment at Dura-Fibre, including his disciplinary history and termination. Dura-Fibre requests that Plaintiff contact Mr. Benrud through Dura Fibre's counsel.

- **Lonnie Zempel**—Dura-Fibre employee, 817 W Beacon Ave, New London, WI 54961. Mr. Zempel was present at the Safety Meeting, at which Mr. Jacobs was assessed a four point disciplinary infraction for committing an unsafe act. Dura-Fibre requests that Plaintiff contact Mr. Zempel through Dura Fibre's counsel.

- **Mark Whitty**—Dura-Fibre employee, 676 Monroe St. Oshkosh, WI 54901. Mr. Whitty was present at the Safety Meeting, at which Mr. Jacobs was assessed a four point disciplinary infraction for committing an unsafe act. Dura-Fibre requests that Plaintiff contact Mr. Whitty through Dura Fibre's counsel.

- **Tim Voelker**—Dura-Fibre employee, 306 S Arlington St. Appleton, WI 54915. Mr. Voelker has knowledge of Mr. Jacobs' employment at Dura-Fibre, including his disciplinary history and termination. Dura-Fibre requests that Plaintiff contact Mr. Voelker through Dura Fibre's counsel.

- **Department of Labor employees**—including but not limited to Jason Grunow, Claudia Moraga, Robert J. Kus, Denise Keller, Tamara Simpson and others involved in the intake and/or investigation of Mr. Jacobs' complaint. These

individuals can be contacted through Plaintiff's counsel. These employees have knowledge of the untimeliness of Mr. Jacobs' complaint, the alleged telephone intake of Mr. Jacobs' complaint, investigation of Mr. Jacobs' complaint, and the unreasonable delay in filing the instant lawsuit.

2.      Identify the individual(s) answering these interrogatories for Defendant, state the nature of the relationship of that individual to Defendant, and identify with particularity the sources of information used by said individual in forming Defendant's answers, including but not limited to any books, records, memoranda, studies, reports, or other documents.

RESPONSE: Subject to the General Objections, Luke Benrud, President of Dura-Fibre.

Mr. Benrud relied on the documents produced in response to these requests and his personal

knowledge in responding to these interrogatories.

3.      Identify all witnesses, including any expert witnesses, Defendant may call to testify on its behalf at the trial regarding this matter. For each such individual, please state the person's full name, title, and work and/or residential address, and describe the testimony Defendant expects each individual to provide at trial.

RESPONSE: Dura-Fibre objects to this Request as premature. Subject to this specific

objection and the General Objections, Dura-Fibre identifies as potential witnesses all individuals

listed in its Response to Interrogatory No. 1. Dura-Fibre reserves the right to identify additional

witnesses, including expert witnesses, on or before the deadlines for such disclosures as required

by the Court.

4.      For each affirmative defense that Defendant has asserted in its Answer or that Defendant intends to assert, describe and identify all facts and evidence, including but not limited to all persons, documents, communications and actions, on which Defendant relies in support of each affirmative defense.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks affirmative

defenses that Defendant "intends to assert" and "all facts and evidence" as discovery is ongoing.

Subject to this specific objection and the General Objections, for the affirmative defenses

addressed below, Dura-Fibre may rely on the witnesses identified in its Response to

Interrogatory No. 1 and any documents produced by Dura-Fibre as responsive to the Requests. In

addition to these documents, Dura-Fibre may rely on the transcript(s) of deposition(s) taken in

this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its response.

- **Affirmative Defense No. 1:** Plaintiff has failed to state a claim upon which relief may be granted. Section 11(c)(1) of the Occupational Health and Safety Act (the "Act"), 29 U.S.C. § 660(c)(1), which forms the basis for this action, provides that employers shall not discharge or discriminate against an employee because that employee (A) "filed any complaint or instituted or caused to be instituted any proceeding under or related to" the Act, (B) "has testified or is about to testify in any such proceeding," or (C) exercised "on behalf of himself or others" any right provided by the Act. Complainant never engaged in any of the conduct identified as "protected activity" by 29 U.S.C. § 660(c)(1) prior to his discharge, and thus could not have been discharged or discriminated against on the basis of any such conduct. Because Complainant had not engaged in "protected activity" under Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1), prior to his discharge, Plaintiff's Complaint fails to state a claim under Section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2).

- **Affirmative Defense No. 2:** Plaintiff's Complaint is rife with speculation and has no basis in fact. Accordingly, Plaintiff failed to comply with the Federal Rules of Civil Procedure's requirement to conduct a good faith investigation into the facts and law before filing a complaint. Defendant fully cooperated in the Occupational Health and Safety Administration's ("OSHA") investigation of Complainant's complaint (although untimely filed), and provided OSHA with voluminous documents at OSHA's request, including Dura-Fibre's safety policies, copies of Dura-Fibre's OSHA 300 logs, lists of employees terminated for accumulating 24 points in safety violations within the last twelve months (with accompanying documentation), and lists of employees disciplined for certain violations. These documents, coupled with Defendant's initial statement of position in response to Complainant's OSHA complaint, supported Defendant's position that Complainant's complaint was meritless. However, despite the sheer volume of facts and information provided to OSHA by Defendant that conclusively established that Complainant's position is without merit, OSHA determined (almost three years after Defendant provided OSHA with documentation supporting Defendant's position) that Defendant violated the Act. Significantly, after OSHA's correspondence to Defendant's counsel on February 21, 2014 regarding Defendant's counsel's request for documentation from OSHA, neither Defendant nor its counsel heard from the Solicitor General's office again until almost three years later, when Defendant received notification from Plaintiff that OSHA has completed its investigation. OSHA's conduct demonstrates that it did not undertake a good faith investigation into the facts before filing this action, and Plaintiff's Complaint ignores the documentation provided to OSHA by Defendant.

- **Affirmative Defense No. 3:** Plaintiff's delay in filing this action constitutes a violation of due process. Defendant discharged Complainant on May 23, 2013. Plaintiff did not initiate this action until April 25, 2017. Even taking Plaintiff's

allegation that Complainant filed a complaint regarding his discharge with OSHA on or about June 4, 2013 as true, this equates to a period of almost four years between the initial filing of Complainant's complaint with OSHA and the initiation of this action. On February 19, 2014, Defendant's counsel requested from OSHA a copy of the OSHA-87 form and any other regional intake sheets regarding Complainant's complaint. On February 21, 2014, OSHA's Claudia Moraga advised Defendant's counsel that its request had been forwarded to the Regional Supervisory Investigator, Robert Kus, and that Mr. Kus would be in contact to discuss the request. On February 26, 2014, Defendant's counsel renewed its request to Mr. Kus for documentation after having not received any of the requested documentation or any further communication from OSHA. Ms. Moraga's February 21, 2014 correspondence to Defendant's counsel would be counsel's last contact with the Solicitor General's office until February 17, 2017 (almost three years later), when Plaintiff contacted Defendant and advised Defendant that OSHA had concluded its investigation and that Plaintiff is prepared to file a complaint against Defendant. Plaintiff has further violated Defendant's right to due process by not providing Defendant with the documents that it had requested numerous times from OSHA, and that it had requested from Plaintiff on February 23, 2017, only to finally produce those documents when such documents served Plaintiff's interests—as Exhibits to its Motion to Strike Defendant's Affirmative Defenses.

- **Affirmative Defense No. 4:** It should be noted that in support of its Motion to Strike Defendant's Affirmative Defenses, Plaintiff provides two Exhibits of significance (which Defendant has requested before) : (1) Exhibit A, which purports to be a Region V Whistleblower's Intake Worksheet, allegedly filled out when Complainant initially contacted OSHA, and (2) Exhibit B, which purports to be a letter from OSHA to Complainant and Defendant regarding an alleged complaint filed with OSHA. It is noteworthy that Defendant had requested these documents several times, but Plaintiff has only finally provided them now, when producing such documents served Plaintiff's interests.

- **Affirmative Defense No. 5:** Plaintiff's claims are barred by the statute of limitations. Section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), provides that "[a]ny employee who believes that he has been discharged or otherwise discriminated against" by an employer in violation of the Occupational Health and Safety Act "may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination." Complainant was discharged on May 23, 2013. However, Complainant did not file a complaint with OSHA until on or after July 12, 2013, more than thirty days after the date of his discharge. (Ex. A.) Thus, Complainant's claim was barred by the statute of limitations and, consequently, Plaintiff's claims are also barred. To the extent Plaintiff alleges that Complainant's complaint was "filed" with OSHA before the thirty day deadline, such is an indication that there is a substantial question of law and/or fact that cannot be resolved this early in the litigation through a motion to strike.

- **Affirmative Defense No. 6:** Plaintiff's claims are barred by the doctrine of estoppel. Despite having received Complainant's complaint on or about July 12, 2013, and despite having received Defendant's initial statement of position in response to Complainant's complaint in August 2013 and Defendant's responses to OSHA's request for documentation in February 2014, Plaintiff did not file a complaint against Defendant until April 25, 2017. Plaintiff's inaction for over three years since the initiation of OSHA's investigation of Complainant's complaint induced reasonable reliance by Defendant, to its detriment, that the investigation had been concluded.

- **Affirmative Defense No. 7:** Plaintiff's claims are barred by the doctrine of laches. Complainant filed his initial complaint with OSHA on or around July 12, 2013. Defendant responded to Complainant's OSHA complaint in August 2013, and provided OSHA with voluminous documents, at OSHA's request, in February 2014. After February 21, 2014, Defendant received no further correspondence or communication from the Solicitor General's office until February 2017, almost three years later, when Plaintiff contacted Defendant and advised Defendant that OSHA had concluded its investigation and that Plaintiff is prepared to file a complaint against Defendant. Plaintiff finally filed this action against Defendant on April 25, 2017, almost four years after Complainant filed his initial complaint with OSHA. This unreasonable delay between the filing of Complainant's initial complaint and Plaintiff's filing of this action is inexcusable, and unduly prejudiced Defendant. Courts have applied the defense of laches to claims by federal agencies such as the United States Equal Employment Opportunity Commission, and have noted that a heavy caseload and agency reorganization are inadequate justifications for lengthy delays in processing claims.

- **Affirmative Defense No. 8:** Plaintiff's claims are barred by the doctrine of waiver. Complainant filed his initial complaint with OSHA on or around July 12, 2013. Defendant responded to Complainant's OSHA complaint in August 2013, and provided OSHA with voluminous documents, at OSHA's request, in February 2014. After February 21, 2014, Defendant received no further correspondence or communication from the Solicitor General's office until February 2017, almost three years later, when Plaintiff contacted Defendant and advised Defendant that OSHA had concluded its investigation and that Plaintiff is prepared to file a complaint against Defendant. Plaintiff finally filed this action against Defendant on April 25, 2017, almost four years after Complainant filed his initial complaint with OSHA. Plaintiff's conduct is inconsistent with the enforcement of its rights to bring an action under Section 11(c) of the Act. Because Plaintiff knew of Defendant's alleged violations of Section 11(c) of the Act on or around July 12, 2013, and yet chose not to initiate this lawsuit until almost four years afterwards, Plaintiff has relinquished its rights to recover. Plaintiff's conduct demonstrates that Plaintiff effectively voluntarily and intentionally relinquished its known right to bring an action against Defendant under Section 11(c) of the Act.

- **Affirmative Defense No. 9:** Complainant's damages, if any, were the result of Complainant's conduct or misconduct, including but not limited to the conduct that led to the issuance of discipline against Complainant.

5.    Describe in detail Defendant's disciplinary points policy, practices, and procedures, in effect between May 20, 2013 and May 23, 2013.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre refers to the following documents from which Plaintiff can derive the answer to this interrogatory: Dura-Fibre's safety policies, including but not limited to the Accident Reporting/Investigation Plan, the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 and the Dura-Fibre employee handbook.

6.    Identify and describe all facts, evidence, and reasoning relating to Complainant's termination on May 23, 2013, including but not limited to what individuals were involved in the decision to terminate Complainant.

RESPONSE: Subject to the General Objections, Complainant was terminated after accumulating 24 points for violations of Plant Rules as provided for in Exhibit B to the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432. The following individuals were involved in the decision to terminate Complainant after his accumulation of 24 points for violations of Plant Rules: Scott Blair, Luke Benrud and Jamie Gonnering.

7.    Identify and describe all facts, evidence, and reasoning relating to any assignment of any disciplinary points to Complainant between May 20, 2013 and May 23, 2013, including but not limited to, who made the decisions to assign disciplinary points during the dates indicated.

RESPONSE: Subject to the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre refers to the following documents from which Plaintiff can derive the answer to this interrogatory: Complainant's disciplinary history, including but not

limited to discipline slips, near miss and incident forms, and safety incident reports, and the statement of Scott Blair.

8.     Identify all of Defendant's employees, including any former employees, who have received disciplinary points for any reason from October 19, 2009 through the present. For each such employee identified, provide the employee's full name, title, and home address, phone number, and email address, and identify the date(s) on which each employee identified was disciplined and the reason for the discipline.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre refers to the following documents from which Plaintiff can derive the answer to this interrogatory: documentation of employees disciplined for Group 1, Rule 4 or Group 2, Rule 5 violations between February 2013 and February 2014 as requested by OSHA during its investigation.

9.     Identify and describe which of "Defendant's safety policies" Complainant "failed to comply with" as set forth in Defendant's "Answer" to paragraph III.(q) in Defendant's *First Amended Answer to Complaint*. Identify all supporting documents and individuals with relevant knowledge.

RESPONSE: Subject to the General Objections, Complainant failed to comply with the Accident Reporting/Investigation Plan. Dura-Fibre references the Accident Reporting/Investigation Plan, Exhibit B to the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 and the Dura-Fibre employee handbook.

10.     Identify all facts supporting Defendant's assertion Complainant failed to comply with Defendant's safety policies identified in Interrogatory 9.

RESPONSE: Subject to the General Objections, it is undisputed that Complainant was informed of Steven Wilz's injury on May 20, 2013 and failed to report that injury that same day.

11. Identify and describe what "unsafe conduct" Defendant alleges Complainant engaged in May 22, 2013 as set forth in Defendant's "Answer" to paragraph III.(s) in Defendant's *First Amended Answer to Complaint.*

RESPONSE: Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre refers to the following documents from which Plaintiff can derive the answer to this interrogatory: the accident investigation form and the related discipline slip.

12. State which of Defendant's policies, practices, or procedures Complainant's alleged "unsafe conduct" identified in Interrogatory 11 were violated.

RESPONSE: Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre refers to the following documents from which Plaintiff can derive the answer to this interrogatory: the accident investigation form and the related discipline slip.

13. Identify and describe what "safety procedures" Defendant alleges Complainant "disregard[ed] . . . in descending the stairs" on May 22, 2013 as set forth in Defendant's "Answer" to paragraph III.(r) in Defendant's *First Amended Answer to Complaint*.

RESPONSE: Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre refers to the following documents from which Plaintiff can derive the answer to this interrogatory: the accident investigation form and the related discipline slip.

14. State the definition of the term "unsafe act" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and the United Steel Workers Local 2-432 under General Rules, Group 1, paragraph 4 (attached as Exhibit A).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "unsafe act" for its employees given that it could be

understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Subject to this specific objection and the General Objections, whether an act constitutes an "unsafe act" is determined on a case-by-case basis by both management and the Health & Safety Committee. Management Health & Safety Committee review whether the conduct creates a risk of harm or actual injury to the employee or other employee. The safety rules in the Dura-Fibre Employee Handbook provide examples of conduct that may constitute unsafe acts, however, such examples do not constitute an exhaustive list of the conduct that may be found to be an unsafe act.

15.    List the dates and attendees of any training Defendant provided to its employees at any point between October 19, 2009 through the present on the definition and identification of an "unsafe act" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 1, paragraph 4 (attached as Exhibit A).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "unsafe act" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre further objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to these specific objections and the General Objections, Dura-Fibre has monthly safety meetings that covers safety updates, employee concerns and a specific OSHA-required topic. One monthly meeting is held for third shift and a separate monthly meeting is held for first and second shift employees. Every month there is a safety quiz that goes along with the monthly safety meeting. In addition, Dura-Fibre has bi-weekly safety committee meetings that all employees are encouraged to attend to bring up suggestions or concerns.

16. State the definition of the term "injury" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 2, paragraph 5 (attached as Exhibit A).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "injury" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Subject to this specific objection and the General Objections, injury is defined in Merriam-Webster's dictionary as: "hurt, damage, or loss sustained."

17. List the dates and attendees of any training Defendant provided to its employees at any point between October 19, 2009 through the present on the definition and/or identification of an "injury" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 2, paragraph 5 (attached as Exhibit A.)

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "injury" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre further objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to these specific objections and the General Objections, Dura-Fibre has monthly safety meetings that covers safety updates, employee concerns and a specific OSHA-required topic. One monthly meeting is held for third shift and a separate monthly meeting is held for first and second shift employees. Every month there is a safety quiz that goes along with the monthly safety meeting. In addition, Dura-Fibre has bi-weekly safety committee meetings that all employees are encouraged to attend to bring up suggestions or concerns.

18.     State the definition of the term "physical harm" as that term is used on the second page of Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "physical harm" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Subject to this specific objection and the General Objections, Subject to this specific objection and the General Objections, harm is generally defined In Merriam-Webster's dictionary as: "physical or mental damage." Inclusion of the adjective "physical" limits that harm to damage that is "of or relating to the body."

19.     List the dates and attendees of any training Defendant provided to its employees at any point between October 19, 2009 through the present on the definition and/or identification of "physical harm" as that term is used on the second page of Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "physical harm" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre further objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to these specific objections and the General Objections, Dura-Fibre has monthly safety meetings that covers safety updates, employee concerns and a specific OSHA-required topic. One monthly meeting is held for third shift and a separate monthly meeting is held for first and second shift employees. Every month there is a safety quiz that goes along with the monthly safety meeting. In addition, Dura-Fibre has bi-weekly safety committee meetings that all employees are encouraged to attend to bring up suggestions or concerns.

20.     State and describe all facts Defendant relied upon to determine Complainant's right ankle twist, sustained on May 22, 2013, constituted an "accident" rather than a "near miss" as those terms are defined in Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Subject to the General Objections, Complainant informed Scott Blair that he had twisted his ankle. The incident constituted an accident because it involved an "occurrence that led to physical harm or injury to an employee." Complainant apparently believes that a near miss is an injury that does not require medical attention, however, this is inconsistent with the definitions of "accident" and "near miss" contained in Dura-Fibre's Accident Reporting/Investigation Plan.

21.     List the dates and attendees of any training Defendant provided to its employees, including but not limited to Mark Witty and Lonnie Zeppel, at any point prior to May 23, 2013, to train them as members of a Health & Safety Committee or team.

RESPONSE: Subject to the General Objections, members of the Health & Safety Committee or team were not provided specific training, however, discussion of incidents was guided by the Safety Incident Report.

22.     Identify all of Defendant's employees who served as a member of a Health & Safety Committee or team responsible for assigning Complainant disciplinary points between May 20, 2013 and May 23, 2013.

RESPONSE: Subject to the General Objections, Dura-Fibre identifies the following employees: Scott Blair, Jamie Gonnering, Mark Witty and Lonnie Zeppel.

23.     Identify all employees who reported physical harm or injury from October 19, 2009 through the present and received disciplinary points for any reason in connection to that physical harm or injury.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information

should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre is providing documentation of employees disciplined for Group 1, Rule 4 and Group 2, Rule 5 violations between February 2013 and February 2014 as requested by OSHA during its investigation.

24.     Identify all employees who reported physical harm or injury from October 19, 2009 through the present and did not receive disciplinary points in connection to that physical harm or injury.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

25.     Identify all employees who received disciplinary points from October 19, 2009 through the present for failing to timely report injury or physical harm.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre is providing documentation of employees disciplined for Group 2, Rule 5 violations between February 2013 and February 2014 as requested by OSHA during its investigation.

# REQUESTS FOR ADMISSIONS

1.    Admit Exhibit A are full and accurate copies of Exhibits B and C to the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 in force and effect during the period between May 20, 2013 and May 23, 2013, inclusive.

RESPONSE: Subject to the General Objections, admit.

2.    Admit Exhibit B is a full and accurate copy of Defendant's Accident Reporting/Investigation Plan in force and effect during the period between May 20, 2013 and May 23, 2013, inclusive.

RESPONSE: Subject to the General Objections, admit.

3.    Admit Exhibit C is a full and accurate copy of the discipline slip issued to Complainant on May 23, 2013.

RESPONSE: Subject to the General Objections, admit.

4.    Admit Exhibit D is a full and accurate copy of the discipline slip issued to Complainant on May 22, 2013.

RESPONSE: Subject to the General Objections, admit.

5.    Admit Exhibit E is a full and accurate copy of the Near Miss & Incident Form Defendant initially issued to Complainant on May 22, 2013.

RESPONSE: Subject to the General Objections, admit.

6.    Admit Exhibit F is a full and accurate copy of the second Near Miss & Incident Form Defendant issued to Complainant on May 22, 2013.

RESPONSE: Subject to the General Objections, admit.

7.    Admit Defendant amended the initial Near Miss & Incident Form issued to Complainant in connection to his twisted ankle from a "Near Miss Accident" to an Accident.

RESPONSE: Subject to the General Objections, admit that Dura-Fibre initially improperly characterized the incident as a "near miss" when the incident should have been classified as an accident because it involved an "occurrence that led to physical harm or injury to an employee."

8.    Admit Defendant would not have terminated Complainant on May 23, 2013 had he not accumulated 24 disciplinary points on May 22, 2013.

RESPONSE: Subject to the General Objections, admit.

9.     Admit Defendant would not have accumulated 24 disciplinary points on May 22, 2013 had he not been issued disciplinary points for his twisted ankle on May 22, 2013.

RESPONSE: Subject to the General Objections, deny. Complainant was not "issued disciplinary points for his twisted ankle" but rather was issued disciplinary points for committing an unsafe act.

10.     Admit Defendant would not have accumulated 24 disciplinary points on May 22, 2013 had he not been issued disciplinary points for allegedly violating Defendant's injury reporting plan on May 21, 2013.

RESPONSE: Subject to the General Objections, deny to the extent this Request states that Complainant "allegedly violat[ed]" Dura-Fibre's injury reporting plan. Subject to this limited denial and with the understanding that Complainant did, in fact, violate Dura-Fibre's injury reporting plan, admit.

11.     Admit Defendant did not train employees on the definition of "unsafe act" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 1, paragraph 4 (attached as Exhibit A).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "unsafe act" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Subject to this specific objection and the General Objections, deny.

12.     Admit Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 did not contain a definition of "unsafe act" as that term is used under General Rules, Group 1, paragraph 4 of that document on or before May 23, 2013.

RESPONSE: Subject to the General Objections, admit that "unsafe act" is not defined in Exhibit B but deny that the phrase "unsafe act" was required to be specifically defined as it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies.

13.    Admit the Employee Handbook in force and effect between May 20, 2013 and May 23, 2013 was not part of or incorporated into any union contract in force and effect during that same time frame.

RESPONSE: This request calls for a legal conclusion, as such Dura-Fibre can neither admit nor deny.

14.    Admit Defendant did not require Complainant to seek medical attention for his ankle twist sustained on May 22, 2013.

RESPONSE: Subject to the General Objections, admit.

15.    Admit Complainant did not seek medical attention for his ankle twist sustained on May 22, 2013 at any point prior to his termination on May 23, 2013.

RESPONSE: Dura-Fibre lacks knowledge sufficient to allow it to conclusively admit or deny the above allegation. Dura-Fibre has no knowledge that Complainant sought medical attention for his ankle twist sustained on May 22, 2013 at any point prior to his termination on May 23, 2013.

16.    Admit Complainant reported his twisted ankle to Defendant on the same day he twisted his ankle prior to the end of Complainant's work shift.

RESPONSE: Dura-Fibre lacks knowledge sufficient to allow it to conclusively admit or deny the above allegation. Subject to this statement, admit that Complainant informed Dura-Fibre that he reported his twisted ankle to Defendant on the same day he twisted his ankle.

17.    Admit Complainant did not violate Defendant's timely reporting policy when he reported his twisted ankle on May 22, 2013.

RESPONSE: Dura-Fibre did not assess whether Complainant violated its timely reporting policy when he reported his twisted ankle on May 22, 2013. As such, deny.

18.    Admit Complainant reported Steve Wilz's potential shoulder injury as soon as Complainant knew Steve Wilz may have been injured.

RESPONSE: Subject to the General Objections, deny.

19.    Admit no one witnessed the incident wherein Complainant sustained an ankle twist on May 22, 2013.

RESPONSE: Dura-Fibre lacks knowledge sufficient to allow it to conclusively admit or deny the above allegation. Subject to this statement, admit that Dura-Fibre is not aware of any witnesses to the incident wherein Complainant was injured on May 22, 2013.

## DOCUMENT REQUESTS

1.      All documents that contain any facts or information upon which Defendant bases its denial that Defendant violated section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c).

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents. In addition to these documents, Dura-Fibre refers to the transcript(s) of deposition(s) taken in this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its production.

2.      All documents that in any way support any claim, denial, fact or allegation contained in Defendant's *First Amended Answer*.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents. In addition to these documents, Dura-Fibre refers to the transcript(s) of deposition(s) taken in this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its production.

3.      All documents that in any way relate to, are referred to in, form the basis of, or were used in preparation of your answers to *Plaintiff's First Set of Interrogatories*, served herewith.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents. In addition to these documents, Dura-Fibre refers to the transcript(s) of deposition(s) taken in this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its production.

4.      All documents that in any way relate to, are referred to in, form the basis of, or were used in preparation of your answers to *Plaintiff's First Set of Requests for Admissions*, served herewith.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents. In addition to these documents, Dura-Fibre refers to the transcript(s) of deposition(s) taken in this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its production.

5. All documents that Defendant may identify or introduce as exhibits or use as evidence at the trial in this matter.

RESPONSE: Dura-Fibre objects to this Request as premature. Dura-Fibre will provide an exhibit list as required by the Court. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents. In addition to these documents, Dura-Fibre refers to the transcript(s) of deposition(s) taken in this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its production.

6. All reports, correspondence, memoranda, resumes or other documents to or from any expert witness whom Defendant expects to call to testify in this matter.

RESPONSE: Dura-Fibre objects to this Request as premature. Dura-Fibre will provide expert reports as required by the Court. Subject to this specific objection and the General Objections, at this time, Dura-Fibre has no responsive documents.

7. Regarding each expert witness whom Defendant expects to call to testify in this cause, his/her curriculum vitae, resume, and/or other documents relating to his/her expertise and/or knowledge of the facts associated with this cause.

RESPONSE: Dura-Fibre objects to this Request as premature. Dura-Fibre will disclose experts as required by the Court. Subject to this specific objection and the General Objections, at this time, Dura-Fibre has no responsive documents.

8. All documents relating to any defenses, including any affirmative defenses, which Defendant has raised and/or may raise at the trial regarding this matter.

RESPONSE: Dura-Fibre objects to this Request to the extent "documents relating to any defenses" is vague and ambiguous. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents. In addition to these documents, Dura-Fibre refers to the transcript(s) of deposition(s) taken in this matter and Plaintiff's discovery responses and document production. Discovery is ongoing and Dura-Fibre reserves its right to supplement its production.

9.     All documents reflecting wages and all other remuneration paid to Complainant by Defendant during his entire term of employment with Defendant.

RESPONSE: Dura-Fibre objects to this Request as vague and ambiguous as to the phrase "entire term of employment" as Complainant had multiple terms of employment with Dura-Fibre. Dura-Fibre further objects to this Request to the extent "[a]ll documents reflecting wages and all other remuneration paid to Complainant" is overbroad and unduly burdensome. Subject to these specific objections and the General Objections, Dura-Fibre is producing documentation sufficient to show wages and remuneration paid to Complainant between February 28, 2008 and his termination.

10.     All documents relating to any job benefit or compensation with monetary value earned by Complainant and supplied by Defendant during Complainant's entire term of employment with Defendant.

RESPONSE: Dura-Fibre objects to this Request as vague and ambiguous as to the phrase "entire term of employment" as Complainant had multiple terms of employment with Dura-Fibre. Dura-Fibre further objects to this Request to the extent compensation with monetary value" is duplicative of the information requested in No. 9. Subject to these specific objections and the General Objections, Dura-Fibre is producing documentation sufficient to show benefits to which Complainant was entitled between February 28, 2008 and his termination.

11.    All documents and communications, including internal email, relating to Defendant's decision to assess disciplinary points to Complainant between May 20, 2013 and May 23, 2013.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks privileged communications. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

12.    All documents and communications, including internal email, relating to any investigation Defendant conducted in connection to Complainant's May 22, 2013 ankle twisting.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks privileged communications. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

13.    All communications, including letters, facsimiles, text messages, emails and any other form of communication, in any way relating to Complainant's termination with Defendant.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks privileged communications. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

14.    All communications, including letters, facsimiles, text messages, emails and any other form of communication, in any way relating to any disciplinary points assessed to Complainant in the week prior to his termination.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks privileged communications. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

15.    Any and all documents Defendant provided to employees defining the term "unsafe act" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 1, paragraph 4 (attached as Exhibit A) at any point between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "unsafe" for its employees given that it could be

understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to this specific objection and the General Objections, Dura-Fibre has no responsive documents.

16.     Any and all documents, including but not limited to attendance sheets and training materials, Defendant provided to employees in connection to any training on the definition of the term "unsafe act" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 1, paragraph 4 (attached as Exhibit A) at any point between October 19, 2009 and the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "unsafe act" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre may be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to this specific objection and the General Objections, Dura-Fibre has produced responsive documents specific to training received by Complainant.

17.     Any and all documents Defendant provided to employees defining the term "injury" as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 2, paragraph 5 (attached as Exhibit A) between October 19, 2009 and the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "injury" for its employees given that it could be

understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to this specific objection and the General Objections, Dura-Fibre has no responsive documents.

18. Any and all documents Defendant provided to employees between October 19, 2009 and the present instructing them on how to determine if an employee has sustained an "injury," as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 2, paragraph 5 (attached as Exhibit A).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to instruct employees on how to determine if an employee has sustained an "injury" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to this specific objection and the General Objections, Dura-Fibre has no responsive documents.

19. Any and all documents Defendant provided to employees at any point between October 19, 2009 and the present instructing them on how to distinguish an "injury," as that term is used in Exhibit B of the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 2, paragraph 5 (attached as Exhibit A), from a non-injury.

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to instruct employees on how to distinguish an injury given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to this specific objection and the General Objections, Dura-Fibre has no responsive documents.

20. Any and all documents that comprised Defendant's "Accident Reporting/Investigation Plan" between and including May 20, 2013 and May 23, 2013 as that

phrase is used in Defendant's "Answer" to paragraph III.(a) in Defendant's *First Amended Answer to Complaint*.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents.

21.    Any and all documents that currently comprise Defendant's "Accident Reporting/Investigation Plan" as that phrase is used in Defendant's "Answer" to paragraph IV.(d) in Defendant's *First Amended Answer to Complaint* and disciplinary policy.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination.

22.    Any and all documents Defendant provided to employees at any point between October 19, 2009 and the present defining the term "physical harm" as that term is used in Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "physical harm" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre also objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to this specific objection and the General Objections, Dura-Fibre has no responsive documents.

23.    Any and all documents Defendant provided to employees at any point between October 19, 2009 and the present informing them on how to determine if an employee suffered "physical harm" as that term is used in Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to instructed its employees on how to determine if an employee suffered

"physical harm" given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre also objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

24.     Any and all documents, including but not limited to attendance sheets and training materials, Defendant provided to employees at any point between October 19, 2009 and the present in connection to any training on the definition of the term "injury" as that term is used in Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to define the term "injury" for its employees given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre also objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre may be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to this specific objection and the General Objections, Dura-Fibre has produced responsive documents specific to training received by Complainant.

25.     Any and all documents, including but not limited to attendance sheets and training materials, Defendant provided to employees in connection to any training provided between October 19, 2019 and the present on how to determine if an employee suffered "physical harm" as that term is used in Defendant's "Accident Reporting/Investigation Plan" (attached as Exhibit B).

RESPONSE: Dura-Fibre objects to this Request to the extent it implies that Dura-Fibre should have or needed to instructed its employees on how to determine if an employee suffered "physical harm" given that it could be understood based on its common usage and viewed in conjunction with Dura-Fibre's safety policies. Dura-Fibre also objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Subject to these specific objections and the General Objections, Dura-Fibre is producing responsive documents.

26. Any and all documents provided to or kept in connection with any training Defendant provided to employees on their duties and expectations associated with serving on a Health & Safety Committee or team at any point prior to and including May 23, 2013.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence as it lacks a time frame. Subject to these specific objections and the General Objections, Dura-Fibre is producing responsive documents.

27. Any and all documents relating to Defendant's disciplinary policy, practices, and procedures, in effect between May 20, 2013 and May 23, 2013 inclusive, including, but not limited to any relevant parts of the Labor Agreement between Dura-Fibre LLC and United Steel Workers Local 2-432, Defendant's Accident Reporting/Investigation Plan, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form and accident investigation forms.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents.

28. Any all documents relating to Defendant's disciplinary policy, practices, and procedures currently in effect, including, but not limited to any relevant parts of the Labor Agreement between Dura-Fibre LLC and United Steel Workers Local 2-432, Defendant's Accident Reporting/Investigation Plan, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form and accident investigation forms.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination.

29.     The labor Agreement between Dura-Fibre LLC and United Steel workers Local 2-432 (or any other labor agreements) and associated Exhibits in force and effect between May 20, 2013, and May 23, 2013, inclusive.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents.

30.     The labor Agreement between Dura-Fibre LLC and United Steel Workers Local 2-432 (or any other labor agreements) and associated Exhibits currently in force and effect.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination.

31.     Any and all disciplinary records, including but not limited to, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form, forms indicating disciplinary points assigned (including in cases where no disciplinary points were ultimately assigned), and accident investigation forms, for any employee alleged or found to have committed an "unsafe act" at any time between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre is providing documentation of employees disciplined for Group 1, Rule 4

violations between February 2013 and February 2014 as requested by OSHA during its investigation.

32. Any and all disciplinary records, including but not limited to, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form, forms indicating disciplinary points assigned (including in cases where no disciplinary points were ultimately assigned), and accident investigation forms, for any employee alleged of or found to have violated Defendant's "safety policy" as set forth in Defendant's Employee handbook and referred to in the May 23, 2013 "discipline slip" attached as Exhibit C at any time between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

33. Any and all disciplinary records, including but not limited to, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form, forms indicating disciplinary points assigned (including in cases where no disciplinary were ultimately assigned), and accident investigation forms, for any employee alleged to or found to have violated "Page 12: On the Job Injuries" of Defendant's Employee Handbook as set forth in Defendant's Employee handbook and referred to in the May 22, 2013 "discipline slip" attached as Exhibit D at any time between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

34. Any and all disciplinary records, including but not limited to, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form, forms indicating disciplinary points assigned (including in cases where no disciplinary points were ultimately assigned), and accident investigation forms, for any employee alleged to or found to have violated the Labor Agreement Between Dura-Fibre LLC and United Steel Workers Local 2-432 under General Rules, Group 2, paragraph 5 and referred to in the May 22, 2013 "discipline slip" attached as Exhibit D at any time between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections. Subject to these specific objections and the General Objections, pursuant to Federal Rule of Civil Procedure Rule 33(d), Dura-Fibre is providing documentation of employees disciplined for Group 2, Rule 5 violations between February 2013 and February 2014 as requested by OSHA during its investigation.

35. Any and all disciplinary records, including but not limited to, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form, forms indicating disciplinary points assigned (including in cases where no disciplinary points were ultimately assigned), and accident investigation forms, for any employee alleged to or found to have violated Defendant's Accident Reporting/Investigation Plan referred to in the May 22, 2013 "discipline slip" attached as Exhibit D at any time between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

36. Any and all disciplinary records, including but not limited to, disciplinary slip forms, Near Miss & Incident Form, Safety Incident Report form, forms indicating disciplinary points assigned (including in cases where no disciplinary points were ultimately assigned), and accident investigation forms, for any employee alleged to or found to have failed to timely report injuries at any time between October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after

Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

37.     Any and all "plant and safety rules" in force and effect between and including May 20, 2013 and May 23 2013 as that term is used in Exhibit B of the Labor Agreement between Dura-Fibre LLC and United Steel Workers Local 2-432 under Plant Discipline Rules, paragraph 4 (attached as Exhibit A).

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Subject to these specific objections and the General Objections, Dura-Fibre is producing responsive documents.

38.     Any and all documents relating to any proceeding at any time in which Defendant's Employee Handbook, or portion thereof, was formally challenged by an employee as not being part of Defendant's contract with United Steel Workers Local 2-432 or any other union.

RESPONSE: Dura-Fibre objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre would be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

39.     Complainant's personnel file.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents.

40.     Any documents and communications related to any arbitration proceeding involving Complainant and Defendant in May 2013 or June 2013.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks privileged communications. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

41.    Any and all OSHA-300 logs and other similar injury reporting documents kept between May 23, 2013 and May 23, 2013, inclusive.

RESPONSE: Dura-Fibre objects to this Request to the extent it is ambiguous as to the time frame. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

42.    Any employee handbooks provided to employees or in force or effect between May 20, 2013 and May 23, 2013, inclusive.

RESPONSE: Subject to the General Objections, Dura-Fibre is producing responsive documents.

43.    Any employee handbooks provided to employees and currently in force or effect.

RESPONSE: Dura-Fibre objects to this Request to the extent it seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination.

44.    Any and all documents and communications related to any National Labor Relation Board proceeding initiated by or on behalf of Complainant in connection to his employment with Defendant.

RESPONSE: Dura-Fibre objects to this Request to the extent it is seeks privileged communications and documents. Subject to this specific objection and the General Objections, Dura-Fibre is producing responsive documents.

45.    Any and all documents and communications related to any grievances related to Defendant's disciplinary point policy from October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is seeks privileged communications and documents. Dura-Fibre further objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre may be willing to provide

responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

46.     Any and all documents and communications in connection to any arbitration proceedings related to grievances associated with Defendant's disciplinary point policy from October 19, 2009 through the present.

RESPONSE: Dura-Fibre objects to this Request to the extent it is seeks privileged communications and documents. Dura-Fibre further objects to this Request to the extent it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of relevant evidence. Dura-Fibre further objects to this Request to the extent that it seeks information after Complainant's termination. Dura-Fibre may be willing to provide responsive information should Plaintiff narrow the scope of this Request so that it addresses these objections.

Dated this 13th day of October, 2017.

Reinhart Boerner Van Deuren s.c.
22 East Mifflin Street, Suite 600
Madison, WI 53703
Telephone: 608-229-2200
Facsimile: 608-229-2100

1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097

John H. Zawadsky
WI State Bar ID No. 1008654
jzawadsky@reinhartlaw.com
Robert S. Driscoll
WI State Bar ID No. 1071461
rdriscoll@reinhartlaw.com
Brittany Lopez Naleid
WI State Bar ID No. 1065846
bnaleid@reinhartlaw.com

Attorneys for Defendant Dura-Fibre LLC

Case 1:17-cv-00589-WCG   Filed 03/08/18   Page 33 of 34   Document 33-15

UNITED STATES DISTRICT COURT FOR THE
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

Plaintiff,

v.

DURA-FIBRE, LLC

Defendant.

Civil Action No.: 1:17-cv-00589

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2017, I caused a true and correct copy of Defendant's

Answers to Plaintiff's First Set of Interrogatories, Requests for Admissions and Requests for

Documents, Bates Labeled documents DURAFIBRE00001-01650 and our Certificate of Service

for same to be served by mail on David J. Rutenberg, U.S. Department of Labor, 230 S.

Dearborn Street, Room 844, Chicago, IL 60604 (Rutenberg.David.J@dol.gov).

Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965

John Zawadsky
WI State Bar ID No. 1008654
jzawadsky@reinhartlaw.com
Robert S. Driscoll
WI State Bar ID No. 1071461
rdriscoll@reinhartlaw.com
Brittany Lopez Naleid
WI State Bar ID No. 1065846
bnaleid@reinhartlaw.com
Jessica M. Simons
WI State Bar ID No. 1099841
jsimons@reinhartlaw.com
Attorneys for Defendant Dura-Fibre, LLC

37529202