**U.S. Department of Labor**  Occupational Safety and Health Administration
230 South Dearborn Street, Room 3244
Chicago, Illinois 60604
(312) 353-2220  Fax (312) 886-5588



JUL 1 9 2013

Certified Mail # 7012 1640 0000 3786 2995

Dura-Fibre LLC
352 6th Street
Menasha, WI 54952

Re: Dura-Fibre LLC/ Timothy Jacobs/ 5-0170-13-038

Dear Sir or Madam:

We hereby serve you notice that a complaint has been filed with our office by Mr. Timothy Jacobs (Complainant) alleging retaliatory employment practices in violation of the whistleblower provisions of the Section 11(c) of the Occupational Safety & Health Act, 29 U.S.C. §660(c) (the Act). A copy of the complaint is enclosed.

The Occupational Safety and Health Administration (OSHA) is responsible for enforcing the whistleblower provisions of the Act, and will conduct its investigation following the procedures outlined in 29 CFR Part 1977. You may obtain a copy of the pertinent statute and regulations at http://www.whistleblowers.gov. Upon request, a printed copy of these materials will be mailed to you.

OSHA will disclose to the parties information relevant to the resolution of the case as well as provide all parties an opportunity to fully respond. As such, both you and the Complainant will receive a copy of each other's submissions to OSHA that are responsive to the above referenced whistleblower complaint. **We request that should you submit any future documents to OSHA, you also send a copy to the Complainant at the address below:**



If the information provided contains private, personally identifiable information about individuals other than the Complainant, such information, where appropriate, should be redacted prior to disclosure. OSHA may contact the party directly for the unredacted copy, if necessary.

**Alternative Dispute Resolution:** OSHA has a voluntary Alternative Dispute Resolution (ADR) program where the parties may resolve the complaint through *Early Resolution* or *Mediation*.

*Early Resolution* is a process in which the parties to a dispute (whistleblower complaint) attempt to resolve the dispute (whistleblower complaint) without an investigation. If the parties elect to

pursue early resolution, an OSHA Regional Alternative Dispute Resolution Coordinator (RADRC) may help the parties reach a settlement agreement before the respondent provides a response to the complaint. The focus of early resolution is quick resolution of the dispute (whistleblower complaint) rather than an investigation to determine the validity of the charge, pretext, or potential violations. Should the parties elect to pursue early resolution but fail to reach a settlement agreement within the specified time frame; the case will be assigned to the investigator noted below to investigate the complaint. However, even if early resolution attempts fail, parties may enter into a settlement agreement at any time during the course of the investigation.

If you would like to pursue early resolution, please call the RADRC identified below **within ten (10) business days of your receipt of this letter.** If the complainant also requests early resolution, the RADRC will contact you to determine whether there is common ground for settlement.

*Mediation* is a voluntary process in which the parties agree to utilize a neutral third party to assist them in resolving a dispute (whistleblower complaint) by mutual agreement. The parties may request mediation at any time after an investigation is underway, *i.e.*, after the respondent provides a response to the complaint. In appropriate cases, OSHA will stay the investigation and assign a neutral third-party mediator to help the parties negotiate a settlement agreement.

In the event that either you or the complainant are unable to reach a settlement agreement **within 20 days of your receipt of your opening letter**, you may submit a written account of the facts and a statement of your position with respect to the allegation within this 20-day time frame. Please note that a full and complete initial response, supported by appropriate documentation, will expedite OSHA's determination in this case.

If you are interested in discussing or pursuing resolution through the **OSHA ADR, "Early Resolution" or "Mediation" Program,** contact:

> Sherrill Benjamin, Regional Alternative Dispute Resolution Coordinator
> USDOL/OSHA
> 365 Smoke Tree Plaza
> North Aurora, IL 60542
> 630-896-8700
> 630-892-2160 – Fax
> benjamin.sherrill@dol.gov

We would appreciate receiving from you within 20 days a written account of the facts and a statement of your position with respect to the allegation that you have retaliated against the Complainant in violation of the Act. Please note that a full and complete initial response, supported by appropriate documentation may help to achieve early resolution of this matter. Voluntary adjustment of complaints can be affected by way of a settlement agreement at any time.

Attention is called to your right and the right of any party to be represented by counsel or other representative in this matter. In the event you choose to have a representative appear on your behalf, please have your representative complete the Designation of Representative form enclosed and forward it promptly. All communications and submissions should be made to the investigator assigned below. Your cooperation with this office is invited so that all facts of the case may be considered.

Sincerely,

Robert J. Kus
Regional Supervisory Investigator
Whistleblower Protection Program

Assigned Investigator:
Claudia Moraga
U.S. Department of Labor – OSHA
365 Smoke Tree Plaza
North Aurora, Illinois 60542
Telephone: (630) 896-8700, x116
Fax: 630-892-2160
E-mail: moraga.claudia@dol.gov

Enclosure: Designation of Representative Form
Complaint
ADR Frequently Asked Questions
Request for Mediation Form

I Timothy Jacobs, phone number was employed at Dura-Fibre LLC, Located at 352 6th street Menasha Wi 54952 office phone number (920)969-3600 Dura Fibre is a laminated paper specialty paper products and manufacturing plant I was rehired by Dura Fibre in April 2008 and worked a total of 24 years at this plant. I was a lead operator on the paper machine, I worked an average of 40 hours per week and occasional overtime, and my pay rate was $21.87 per hour. My job duties were operating the machine in all positions, trouble shooting, issues with maintance, raw material to quality of final product, assist in training personal on safest way possible in the jobs. My supervisor was Scott Blair. I am the secretary in the union local U.S. Steelworkers local 432-2 and

On May 20, 2013 between 11am and 12 pm I was working on the paper machine with when he tweaked his shoulder he was on the top deck of laminator reaching out to grab a web (paper) to pass to another person and that is when he told me he tweaked his shoulder. I asked if he was all right. He told me he was fine, its nothing and he was ok, so we continued stringing up the machine and working the rest of the day. On May 21, 2013 in the morning complained to me that his shoulder was sore, I told we should fill out an accident report, we filled out the report. I attempted to submit it to my supervisor Scott Blair but he was not in the mill, so I walked it up to the front office and gave the report to human resources manager Jamie Gonnering. was with her; she seemed concerned and asked how was doing? I told her he was fine later that night told me Jamie Gonnering called him at home and instructed him to go and have a drug test done. It is company policy if you have an accident a drug test is done. However, this regulation is not always followed. On May 22, Scott Blair called who also happens to be into his office he wrote him up for 8 points because he didn't report accident the day it happened. Later I was called into Scott's office and was also written up for 8 points for knowing about the incident and not reporting it. I never heard of this happening to anyone before, previous to this he told me I was not going to be happy because of what he was going to do, but that he too would be written up for this incident if it would have been him. That's when I was told I was going to be written up for 8 points knowing about the incident and not reporting it. There was a slight argument regarding the incident, I told him I wouldn't sign the write up slip Scott noted on the write up that I refused to sign. He appeared angry that I wouldn't sign. I told him it was not right how this was being handled. Then I left his office and told what happened to me, told me that he didn't receive medical attention. Normally only when you receive medical attention this should have been a near miss with a no point writes up. Earlier that day I twisted my ankle at the bottom of the step of machine. Awhile after points were given Scott was out by the laminator at which points I told him earlier that I twisted my ankle coming off the machine by the coater at the bottom of the steps, which is only five steps, and that my shoulder was very sore from setting splices up above my head. The reason I was telling him this is so, I didn't receive any more write ups. He asked me how I twisted my ankle. I told him walking down the steps comment from Scott was I figured that would happen. (Seemed much discussed) a short time later he returned with an accident report, he had me look it over to make sure everything was good and I signed it. I didn't receive any medical attention for this but they sent me for a drug test anyway. Crew that says this was working. It's daily to receive bumps and bruises small cuts twisted ankles, etc. that's

normal wear and tear working in the factory setting. Some people have had incidents that were never written up and were not sent for drug testing.

After          left that day at 2pm Scott Blair and Jamie grabbed 2 union employees to conduct and go over the accident investigation form on my twisted ankle. The 2 people were                    who has not been employed with the company very long. I was working overtime that day. When I returned from the drug testing center I found out that these          went to this meeting (which are second shift employees that knew nothing of the incident that happened on day shift), I talked to          to see how the meeting went and          said I would probably end up with 4 points I asked him how this happened, he stated when they first started talking they wanted to give you more points. He didn't know the facts of the final outcome because he didn't have form in front of him.

On May 23 closely around 11 pm I was told by Scott I had a meeting in the front office. 
          and I went to the office metting was held with Jamie Gonnering, Scott Blair, Luke (plant manager) we talked about the accident investigation from that was filled out, there were discrepcies on how it was done, but the company said it don't matter, you are receiving 4 points and out of 24 points system you have reached 24 points and will be let go. My previous 12 points before to the 12 points for the near misses. Grievances are in motion right now.

The accident for that Scott and I went over the tweaking my ankle was checked as a near miss on the form and which I thought was write up because of no medical treatment was involved was rewritten. Scott wanted me to sign another one that was marked as an accident, the reason this was done was because people cannot be written up for a near miss only accidents. I refused to sign this form knowing where this was going and that it wasn't the original form. They discarded it. I told them we would be filing grievances forms there was some loud discussions during this meeting but nothing became violent. I was then escorted to my locker by          , and Scott Blair cleaned out my locker and left the mill property. It used to be if there was a no medical treatment it was not considered an accident and not recordable. Now polices have changed to management discretion if something's to be considered an accident or tell anyone of an accident or near misses they are afraid of being punished. No one has ever been terminated from an accident or injury. In the past year there had been changes in the way people have been written up. Some people get written up some people don't. For example          dislocated his finger he and treated himself, he didn't report this but management found out, He was never written up for that incident.          . Receive a hernia and didn't report it until a later date never received a punishment and also needed surgery to fix the problem.          hurt his shoulder while stringing up reported it and never received no drug test, nor punishment.          who burned his hand received no drug test nor was accident investigation done, which his foreman knew of this accident. I have statements for          on the cut she received on her leg awhile back. She would have been punished for this.' It and taped herself up and another letter about her hernia accident. In the past month          has filled out 3-4 accident reports and never received any points or write-ups.

I believe I was terminated on May 23, 2013 because I reported an injury. I would like to be reinstated to my former position and all back pay and lost wages.

[signature]  7-12-13

Case 1:17-cv-00569-WCG   Filed 04/23/18   Page 5 of 5   Document 46-3   DOL0326