

Reinhart Boerner Van Deuren s.c.
P.O. Box 2018
Madison, WI 53701-2018

22 East Mifflin Street
Suite 600
Madison, WI 53703

Telephone: 608-229-2200
Fax: 608-229-2100
Toll Free: 800-728-6239
reinhartlaw.com

August 22, 2013

John H. Zawadsky
Direct Dial: 608-229-2202
jzawadsky@reinhartlaw.com

SENT BY E-MAIL

Ms. Claudia Moraga
Investigator
U.S. Department of Labor—OSHA
365 Smoke Tree Plaza
North Aurora, IL 60542

Dear Investigator Moraga:   Re:  Dura-Fibre LLC/Timothy Jacobs/
5-0170-13-038

    Please consider this correspondence our response to and position letter with respect to the above-referenced Complaint. It is Respondent's position that the Complaint is without merit and should be dismissed.

A.    The Complaint

    The Complaint does not identify any protected conduct engaged in by the Complainant. Rather, the Complaint provides a somewhat inaccurate account of two disciplinary events in May 2013 resulting in Mr. Jacobs' termination. Mr. Jacobs' then asserts: "No one has ever been terminated from an accident or injury."

    Mr. Jacobs further alleges: "Some people get written up some people don't." He then provides purported examples of this differential treatment.

    Mr. Jacobs concludes: "I believe I was terminated on May 23, 2013 because I reported an injury."

B.    The Facts

    1.    Overview

    Mr. Jacobs was a valued laminator employee. He was knowledgeable and experienced in his job. It was a significant operational loss to the Company to be forced to terminate Mr. Jacobs.

Exhibit 3

Mr. Jacobs was originally hired with a large group of other production and maintenance employees when Dura-Fibre acquired the assets of the company in 2004. Mr. Jacobs quit his employment with Dura-Fibre on or about August 26, 2005. Mr. Jacobs was rehired on February 25, 2008.

2. Disciplinary History

Please note that Mr. Jacobs was disciplined and assessed points for three prior violations of the Company's safety policies. We note the following:

--On July 13, 2011, Mr. Jacobs received 4 points for committing an unsafe act.

--On August 24, 2011, Mr. Jacobs received another 4 points for violating safety procedures.

--On November 5, 2012, Mr. Jacobs received 4 points for failing to correct a known hazardous condition which resulted in a work injury. In that case, Mr. Jacobs injured his back when he tripped over a hose. Mr. Jacobs was found "at fault" because he had not put the hose away. He made no claim he was disciplined for "reporting an injury".

3. Termination

On or about May 21, 2013, the Company discovered that employee Steven Wilz had been injured while working on the laminator machine on May 20, 2013. Mr. Jacobs was the lead person. It is the responsibility of both the injured employee and the lead person to promptly advise the Company of work related injuries before the end of the shift. Neither Jacobs nor Wilz made such a report in a timely fashion. (Copy of Safety Reporting Policy enclosed, see p. 2). The lead person is paid $2.15 more per hour because of the added responsibilities of that position.

It was determined that Mr. Jacobs should be assessed 8 points under the Company's disciplinary policy for his failure to report Mr. Wilz's injury.

Please note that the Company does not unilaterally assess penalties for safety violations. Rather, a Safety Incident Report is filled out. Company managers go through an evaluation of the work related accident with at least 2 union members and the group agrees on how the individual involved in the accident should be scored, and in essence determines whether the employee committed an unsafe act.

Indeed, the Health and Safety Committee has been established in negotiations between the Company and the Union. (Copy of Article 34 attached). This committee "shall act as the

Accident Investigating Committee." (Section 34.8 of agreement) (relevant contract provisions attached).

On May 22, 2013, Mr. Jacobs twisted his ankle while coming down a short flight of steps. The incident was investigated by Scott Blair (copy of accident investigation form attached). A near incident form was also filled out (copy attached). Pursuant to Dura-Fibre procedure, the incident was then reviewed by Blair, Jamie Gonnering (Human Resource Directors) and two bargaining unit members of the Health and Safety Committee. It was determined that Mr. Jacobs should be assessed 4 points based on the completion of the Safety Incident Form. (Copy attached).

With this 4 point violation, Mr. Jacobs had reached 24 points under the Company's disciplinary policies and was dismissed.

4. <u>Disciplinary Policy</u>

The Company's plant discipline rules are attached as Exhibit B to the parties' collective bargaining agreement. These rules are the subject of Article 32 of the parties' contract. We attach a copy of the Plant rules.

Under these rules: "any employee who accumulates twenty-four (24) points for violation of Plan Rules is just cause for discharge."

Rule 4 under Group 1 rules provides: Committing an unsafe act. Four (4) to eight (8) points, with input from the safety committee."

Under Group 2 violations, Rule 5 provides: "Failure to report to supervisor an off-duty accident or injury on the date of injury before leaving Company premises." Group 2 violations carry a penalty of eight (8) points.

5. <u>Other Safety Related Disciplines</u>

At least 20 other employees have been disciplined for safety violations in the past year.

6. <u>Reporting Work Injuries</u>

At least 30 employees have reported work-related injuries in the past year. No employee, including Mr. Jacobs, has ever been disciplined for reporting an injury.

DURAFIBRE00292

7. <u>NLRB Charge</u>

On June 6, 2013, Mr. Jacobs filed an unfair labor practice charge with the NLRB (copy enclosed). In that charge, Mr. Jacobs alleged: "On May 23, 2013 the Employer discriminated against employee TIMOTHY JACOBS (emphasis in the original) by discharging him in order to discourage union activities and/or protected activities." The charge was investigated and found to be without merit.

C. <u>Discussion and Analysis</u>

The instant Complaint is without merit.

First, the allegation that Mr. Jacobs was terminated because he reported an injury (i.e., twisting his ankle) does not appear to state a prima facie case for a violation of Section 11(c)(1) of the Act. Thus, Mr. Jacobs is not asserting that his Complaint was in any way safety related. The Complaint does not allege that the injury was caused by an unsafe condition that needed to be corrected or because he threatened to file or in fact filed a complaint with OSHA. For this reason alone, the Complaint is without merit.

Second, assuming arguendo that the complaint encompasses protected conduct under Section 11(c)(1) of the Act, there is no evidence that Mr. Jacobs was terminated for reporting an injury. To the contrary, all of the evidence shows that he was terminated for engaging in unsafe conduct.

In this regard we would stress, bargaining unit employees are involved in all safety accident evaluations. Thus, a supervisor, the human resource director and two members of the bargaining unit meet to review and discuss each incident. This active involvement of bargaining unit employees means that the Company is not in a position to independently impose discipline under the safety policies. Even more significantly, it would be absurd to suggest that the members of the bargaining unit acted out of an illegal motive in finding Mr. Jacobs "at fault" for the incident involving his ankle sprain.

Moreover, the Company's safety policies are totally focused on encouraging employees to report work-related injuries—not penalizing them for a compliance with that policy. Thus, Jacobs reporting the injury was not the issue with respect to discipline. Rather, the circumstances leading up to the injury revealed that Mr. Jacobs had engaged in unsafe conduct which resulted in the injury. The fact Mr. Jacobs engaged in unsafe behavior was the sole reason for his discipline.

We would further note that the "termination" was not because of the incident of May 23. Rather, the termination was a result of the Company's point system. Thus, the 4 points assessed

for the unsafe conduct of May 23 was but a culmination of a series of disciplinary events that led to the termination.

We would further emphasize that the Complaint itself undermines Mr. Jacobs' position. Thus, according to Mr. Jacobs: "No one has ever been terminated from an accident or injury." This statement is correct. So how can Mr. Jacobs assert that he was terminated because he "reported an injury". The lack of logic to such a position is evident.

Moreover, it is undisputed that the Company has had at least 30 work-related injuries (all reported) in the past year. None of these other individuals (including Mr. Jacobs on one previous occasion) were terminated. Accordingly, the overwhelming evidence is that the Company **does not terminate** employees for reporting injuries or for suffering injuries on the job.

In this respect we would note that Mr. Jacobs' effort to show that "some people get written up some people don't" proves nothing. To the contrary, it shows that the Company has not disciplined other employees who report injuries on the job—even when those injuries are not reported in a timely manner.

Finally, Mr. Jacobs' earlier filed charge with the NLRB claiming that the "real reason" for his termination was his Union activities is directly at odds with his contention in this proceeding that the "real reason" for his termination was for reporting a job related injury.

## CONCLUSION

There is absolutely no legal or factual basis to the Complaint. The Complaint should be summarily dismissed.

Yours very truly,

John H. Zawadsky

10156510

Encs.

DURAFIBRE00294

Ms. Claudia Moraga
August 22, 2013
Page 6


bcc   Mr. Luke Benrud

DURAFIBRE00295